UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| CHRISTOPHER GATES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:17-cv-19-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**\*\*\*\***

Plaintiff Christopher Gates brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision, as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility

1

determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.

On September 26, 2006, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI"), alleging disability as of March 6, 2006. [TR 238-40, 242-49]. Plaintiff's claims were denied initially and on reconsideration. [TR 146-49]. Plaintiff then requested a hearing on the matter.

[TR 144-45]. An Administrative Law Judge ("ALJ") reviewed the evidence of record and issued a fully favorable written decision without holding a hearing. [TR 127-31]. Attorney Eric C. Conn represented Plaintiff throughout this disability determination process. [*Id.*].

The Office of the Inspector General later notified the Social Security Administration ("SSA") that there was reason to believe that fraud was involved in certain cases submitted to the SSA by Eric C. Conn, which included faulty evidence submitted by Bradley Adkins, Ph. D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., and/or David P. Herr, D.O., between January 2007 and May 2011. [TR 157-60]. Because Plaintiff was represented by Eric C. Conn during the aforementioned time period, and because his case included evidence obtained from one or more of the aforementioned medical providers, the SSA had to redetermine his eligibility for benefits. [*Id.*].

In redetermining Plaintiff's claim for benefits, the Appeals Council ("AC") was obliged to disregard all evidence obtained from the aforementioned medical providers. [TR 132-136]. On August 17, 2015, the AC found that the ALJ's decision was not supported by the remaining evidence. [*Id.*]. It then remanded the case to ALJ John M. Dowling for a new hearing and further redetermination proceedings. [*Id.*].

On March 22, 2016, ALJ Dowling held a video hearing. [TR 65-100]. Plaintiff, now represented by attorney Michael Taylor, participated in the hearing, along with impartial vocational expert Julie Bose. [*Id.*]. Consistent with the AC's instructions, ALJ Dowling disregarded evidence obtained from the aforementioned medical providers and "determine[d] whether the beneficiary was entitled to and eligible for benefits on April 4, 2007, the date SSA initially allowed the claim." [TR 47].

At Step One of the disability determination analysis, ALJ Dowling found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date and April 4, 2007. [TR 51]. At Step Two, he concluded that Plaintiff had the following severe impairments: cervical degenerative disc disease, status post ACDF at C5-C6, cervical congenital fusion at C6-C7, and hypertension. [*Id.*].

At Step Three, ALJ Dowling determined that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 53]. In reaching this conclusion, ALJ Dowling found that "Listing 1.04 is not met because the record does not demonstrate compromise of a nerve root or the spinal cord with additional findings of nerve root compression, evidence of spinal arachnoiditis, or lumbar spinal stenosis resulting in

4

pseudoclaudication." [*Id.*]. He also noted that, "[c]oncerning Listing 11.14 for peripheral neuropathies, the record fails to demonstrate any significant and persistent disorganization of motor function in two extremities that have resulted in sustained disturbance of gross and dexterous movements or gait and station in spite of prescribed treatment." [*Id.*].

At Step Four, ALJ Dowling found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that Plaintiff "could not climb ladders, ropes or scaffolds." [TR 53]. "He could occasionally stoop, kneel, crouch, and crawl" and "could occasionally reach overhead bilaterally." [*Id.*]. However, "[h]e needed to avoid concentrated exposure to extreme cold and excessive vibration" and "all exposure to unprotected heights and hazardous machinery." [*Id.*]. ALJ Dowling then concluded that Plaintiff was capable of performing past relevant work as a purchasing agent, shipping clerk, and truck parts counterman. [TR 57].

Nevertheless, ALJ Dowling proceeded to the final step of the sequential evaluation and determined that there were a significant number of other jobs in the national economy that Plaintiff could perform. [*Id.*]. ALJ Dowling based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education,

5

work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as a call out operator (47,100 national) or document preparer (29,400 national). [TR 58]. Thus, he concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from March 6, 2006, through April 4, 2007, the date of the prior decision. [*Id.*].

On December 2, 2016, the AC denied Plaintiff's request for review of ALJ Doyle's administrative decision. [TR 8-14]. Plaintiff filed the instant action on January 31, 2017. [DE 2]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 13, 14]. Plaintiff essentially advances three arguments on appeal. First, he contends that the ALJ erred in finding that his Chiari malformation, obesity, and depression were non-severe impairments. Second, he takes issue with the ALJ's consideration of treating source opinions rendered by Drs. Brooks, Khan, El-Naggar, and Dixit. Third, Plaintiff insists that the ALJ erred in assessing his credibility. The Court will address each of these arguments in turn.[1]

---

[1] Although Plaintiff occasionally notes that the redetermination process was not his fault, he does not raise the constitutional arguments that took center stage in many of the other cases related to Eric C. Conn's fraud scheme. *See, e.g., Perkins v. Colvin*, 224 F. Supp. 3d 575 (E.D. Ky. 2016); *Carter v. Colvin*, 220 F. Supp. 3d 789 (E.D. Ky. 2016); *Hicks v. Colvin*, 214 F. Supp. 3d 627 (E.D. Ky. 2016). For the reader's

**III.**

***A.  Severity of Impairments[2]***

At Step Two of the disability determination process, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996). An impairment is severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

The Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," intended to screen out totally frivolous claims. *Higgs*

---

edification, Conn plead guilty to the fraud scheme, but absconded prior to sentencing.

[2] This argument is imbedded in Plaintiff's discussion of ALJ Dowling's credibility assessment. The Court has chosen to address it as a separate issue.

7

*v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Thus, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Id.* (explaining further that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). Because the regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.925(a)(2). Thus, an ALJ's failure to find that an impairment is severe does not constitute reversible error. *See also Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow her to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.").

Plaintiff complains that ALJ Dowling erred in finding that his Chiari malformation, obesity, and depression were non-severe. As for the first condition, Plaintiff relies on a June 1, 2006, treatment note from Dr. Brooks that stated "IMPRESSION: Degenerative osteoarthritis 2. Thoracic outlet syndrome 3. Rule out Arnold Ciari Malformation 4. Carpal tunnel syndrome." [TR 599]. However, Plaintiff does not explain how treatment notes positing the existence of his condition demonstrates that ALJ Dowling erred in evaluating its severity. ALJ Dowling observed that "the beneficiary's longitudinal medical evidence during the period at issue does not include a diagnosis or symptoms related to a Chiari malformation." [TR 52]. He also noted that Plaintiff was not diagnosed until 2014 and that Dr. El-Naggar described his condition as stable and unlikely to result in seizures. [*Id.*]. Thus, there was a lack of medical evidence "demonstrat[ing] significant symptoms or functional limitations during the period at issue." [*Id.*].

Plaintiff similarly fails to explain how ALJ Dowling erred in assessing his obesity and depression. The ALJ pointed out that Plaintiff's "Body Mass Index of 32.4 did not cause complications to his neck symptoms." [TR 51]. He also cited to evidence in the record suggesting that Plaintiff suffered only mild limitations from depression and noted that Plaintiff "did not assert any depressive symptoms during the hearing." [TR 52].

Finally, Plaintiff takes issue with ALJ Dowling's failure to discuss his carpal tunnel syndrome. However, as the Commissioner is quick to point out, failure to discuss every impairment mentioned in the medical records is not tantamount to a failure to consider such evidence. *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion."). Moreover, the record reflects that Plaintiff's carpal tunnel was mild and present only on Plaintiff's right side. [TR 659, 589, 598]. Even construing Plaintiff's claim liberally, as is required at this stage of the disability determination analysis, the Court finds that there is substantial evidence in the record to support ALJ Dowling's conclusions vis a vis Plaintiff's obesity, depression, Chiari malformation and carpal tunnel syndrome.

In the alternative, even if ALJ Dowling erred in finding that Plaintiff's obesity, depression, and Chiari malformation were non-severe impairments, the error is harmless. The same is true of his implicit conclusion that Plaintiff's carpal tunnel syndrome was non-severe. ALJ Dowling found that Plaintiff suffered from a host of severe impairments, including cervical degenerative disc disease, status post ACDF at C5-C6, cervical congenital fusion at C6-C7, and hypertension. [TR 51]. As a result, ALJ Dowling was

obliged to continue his analysis, considering both severe and non-severe impairments in the remaining steps of the disability determination analysis. Reversal is therefore inappropriate on this ground.

### B. *Treating Source Opinions*

To determine a plaintiff's ability to perform past relevant work, an ALJ is responsible for "evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). The RFC is an assessment of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 416.945(a)(3).

Medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). A treating source is a

"physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." *Id.*

If the opinion is not entitled to controlling weight, the ALJ must decide how much weight to give it by considering the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's specialization; and other factors brought to the ALJ's attention.[3] *Id.*

Although the ALJ will consider opinions from medical sources on issues such as whether a claimant meets or equals the requirements of an impairment in the Listing of Impairments, the claimant's RFC, the application of vocational factors, and the determination of disability, opinions on such issues are not entitled to any "special significance" because "the final

---

[3] Plaintiff describes Drs. Brooks, Khan, El-Naggar, and Dixit as treating physicians. Although ALJ Dowling did not explicitly label them as such, the Commissioner does not contest this characterization, and the Court sees no reason to question it.

responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

In this case, ALJ Dowling offered the following analysis of treatment notes and opinions rendered by William Brooks, M.D. and Alam Khan, M.D.:

> On June 1, 2006, William Brooks, M.D., noted that the beneficiary complained of pain in his cervical spine radiating into his upper extremities. Dr. Brooks noted that neither epidural steroid injections nor physical therapy had improved his pain. Dr. Brooks found that the beneficiary had decreased range of motion of his neck secondary to strength, but he retained good strength despite his degenerative disc disease. (Exhibit 6F, 8-9). A subsequent cervical myelogram showed the presence of degenerative spur formation at C5-6 on the right side. Dr. Brooks prescribed the beneficiary Lortab, Soma, and Naprosyn, along with scheduling the beneficiary for surgery. (Exhibit 6F, 6). On June 30, 2006, the beneficiary underwent an anterior cervical discectomy, interbody fusion at C5-6 (Exhibit 6F, 3).
>
> On July 20, 2006, Dr. Brooks noted that the beneficiary was quite pleased with the resolution of his upper extremity symptoms. Dr. Brooks added that the beneficiary's x-ray looked excellent (Exhibit 7F, 5). Later, on August 31, 2006, Dr. Brooks noted that the beneficiary complained of numbness in both arms and the back of his neck. However, a neurological examination by Dr. Brooks produced entirely normal findings. Dr. Brooks added that the beneficiary's reflexes, sensation, and strength were good and intact (Exhibit 7F, 3). A subsequent cervical MRI on September 7, 2006, showed some bony encroachment and narrowing at C5-6 and C6-7, but the spinal canal was fairly well maintained (Exhibit 7F, 2).
>
> Later, on September 14, 2006, Alam Khan, M.D., examined the beneficiary and noted that he complained of residual problems after neck surgery. He added that the beneficiary has a history of hypertension. Dr. Khan

13

> found the beneficiary to have intact sensation, normal muscle strength in his upper and lower extremities, normal gait, and normal reflexes (Exhibit 9F, 16-18). Subsequently, on January 15, 2007, the beneficiary did not complain of neck pain to Douglas Irwin, M.D., and Dr. Irwin noted that the beneficiary had good control of his hypertension with medications (Exhibit 15F, 2). The beneficiary did not seek significant treatment after this visit during the relevant period.

[TR 55]. Plaintiff complains that ALJ Dowling failed to consider Dr. Brooks's notes from August 31, 2006 and Dr. Khan's notes from April 26, 2006, as well as Dr. El-Naggar's notes from March 6, 2006, and Dr. Dixit's notes from September 23, 2006.

Contrary to Plaintiff's suggestion, the above-cited passage illustrates that ALJ Dowling considered Dr. Brooks's notes from August 31, 2006, which indicated that Plaintiff's complaints of pain were not consistent with examination findings. [TR 606]. As for Dr. Khan, he opined that Plaintiff "should be considered at least temporarily disabled" on April 26, 2006. [TR 640]. Similarly, Dr. Rahul Dixit stated that Plaintiff "has improved after his surgery but I am afraid not to the extent that he can be gainfully employed." [TR 659]. While ALJ Dowling did not specifically discuss these opinions, this does not necessarily lead to the conclusion that he failed to consider them. Moreover, he was not required to afford these opinions any particular weight because they pertained to issues reserved for the Commissioner.

14

The same is true of Dr. Amr El-Naggar's suggestion that Plaintiff should not lift more than 20 pounds. [TR 587]. This opinion pertains to Plaintiff's RFC, which is an issue reserved for the Commissioner. However, it appears that ALJ Dowling ultimately incorporated Dr. El-Naggar's suggested limitation into Plaintiff's RFC, so Plaintiff's assertion that ALJ Dowling failed to consider this treatment note is not well-taken.

In sum, the record indicates that ALJ Dowling gave due consideration to all of the evidence in the record, including the treatment notes specifically identified by Plaintiff, and weighed those notes in accordance with the applicable regulations. Whether this Court would have weighed the evidence as he did is immaterial. *Her*, 203 F.3d at 389-90. This aspect of his decision must be affirmed.

### C. *Credibility Assessment*

As explained in the preceding section, the ALJ is responsible "evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity" and determine his ability to do past relevant work. *Webb*, 368 F.3d at 633 (internal quotations omitted). The RFC is an assessment of how the claimant's "impairments, and any related symptoms, such as pain, … cause physical and mental limitations that affect what [he

or she] can do in a work setting." 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

When evaluating a claimant's symptoms, the ALJ must follow a two-step process. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996). First, he or she must consider whether there is "a medically determinable physical or mental impairment that could reasonably be expected to produce" the claimant's pain or other symptoms. *Id.* Once the existence of a medically determinable impairment is established, "the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.*

If a claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.*

The ALJ must then explain his or her decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

16

statements and the reasons for the weight." *Id.* at 248. Blanket assertions that the claimant is not believable will not suffice, nor will credibility explanations "which are not consistent with the entire record and the weight of the relevant evidence." *Id.* That being said, reviewing courts must give great weight and deference to the ALJ's credibility determination. *Id.*

ALJ Dowling provided the following assessment of Plaintiff's credibility:

> As stated above, the undersigned has determined that the beneficiary had the following severe impairments: cervical degenerative disc disease, status post ACDF at C5-C6, cervical congenital fusion at C6-C7, and hypertension. The beneficiary asserted that he could no longer work due to constant pain in his neck and arms. He further testified that he experienced numbness, which was found to be caused by a pinched nerve. He stated that he required a cervical fusion, but after a few months his pain came back. He asserted that his surgeon told him that his neck was a mess and he would not perform additional surgery. Additionally, the beneficiary testified that his blood pressure problems can cause decreased leg and arm functioning. He alleged that his physical problems limited his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, and stair climb (Exhibits 6E, 7E).
>
> In terms of his activities of daily living, the beneficiary stated that he lived with his wife and young son, who he did not care for despite his wife working. Yet, he admitted in his function report that he did try to help with caring for his child (Exhibit 7E). He was able to drive. He reported that he could slowly perform all his personal care activities. He could also perform light housework and yard work. He shopped in stores when needed.
>
> After careful consideration of the evidence, the undersigned finds that the beneficiary's medically determinable impairments could reasonably be expected to

have caused the alleged symptoms; however, the
beneficiary's statements concerning the intensity,
persistence and limiting effects of these symptoms are
not entirely consistent with the medical evidence and
other evidence in the record for the reasons explained
in this decision.

Turning to the medical evidence, the objective findings
in this case fail to provide strong support for the
bene3ficiary's allegations of disabling symptoms and
limitations and they do not support the existence of
limitations greater than those reported in the above
residual functional capacity.

[TR 54-55].

After reviewing the notes from Dr. Brooks and Dr. Khan, ALJ

Dowling further explained:

Overall, the examination findings detailed above
demonstrate that the beneficiary's condition stabilized
and improved after surgery, resulting in improved
strength, sensation, and reflexes despite complaints of
residual pain. Still, the undersigned restricts the
beneficiary to working at the light exertional level
despite the improvement. Additionally, due to his
reports of arm numbness, the beneficiary should only
occasionally reach overhead as this could exacerbate his
condition. Similarly, in order to avoid aggravating his
impairments, the beneficiary should avoid concentrated
exposure to extreme cold and excessive vibration, as
well as performing more than frequent stooping,
kneeling, crouching, and crawling. Moreover, the
beneficiary must avoid exposure to unprotected heights
and the use of hazardous machinery due to his history of
hypertension. The undersigned notes that this residual
functional capacity is consistent with the beneficiary's
ability to help care for his child and performing light
chores and yard work.

Thus, as discussed above, the objective medical evidence
does not provide a basis for finding limitations greater
than those determined in this decision. In addition,
consideration of the factors described in 20 CFR
404.1529(c)(3) & 416.929(c)(3) also leads to a

18

> conclusion that the beneficiary's subjective allegations are not consistent with the evidence of record, and that the residual functional capacity finding in this case is justified.

[TR 55-56].

Plaintiff complains that ALJ Dowling's decision to discount his credibility was not supported by substantial evidence. In making this argument, he observes that several treatment notes discuss his complaints of severe pain. As explained *supra*, it is not the task of this Court to conduct a de novo review of the ALJ's decision or reweigh the evidence. *Cutlip*, 25 F.3d at 286. Thus, it does not matter whether there is evidence to support Plaintiff's position. This Court's role is limited to determining whether ALJ Dowling's credibility assessment is supported by substantial evidence. *Her*, 203 F.3d at 389-90. The record indicates that ALJ Dowling acknowledged these notes, but went on to explain that the objective medical evidence and the medical opinion evidence in the record were inconsistent with the extent and severity of his symptoms. Because this aspect of ALJ Dowling's decision is consistent with the applicable regulations and supported by substantial evidence, affirmance is warranted.

**IV.**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Christopher Gates's Motion for Summary Judgment [DE 13] be, and is, hereby **DENIED**;

(2) The Commissioner of Social Security's Motion for Summary Judgment [DE 14] be, and is, hereby **GRANTED**; and

(3) A Judgment shall be entered contemporaneously herewith.

This the 4th day of August, 2017.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge